IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT RICHARD KING,

                              Petitioner,


               v.                          CASE NO.  05-3423-RDR

DUKE TERRELL,
BOP WARDEN, et al.,

                         Respondents.

<u>MEMORANDUM AND ORDER</u>

        This is a petition for writ of habeas corpus, 28 U.S.C.
2241, filed pro se by an inmate of the Federal Prison Camp,
Leavenworth, Kansas.  In the body of his pleading, King also
asserts jurisdiction under 28 U.S.C. §§ 1331(a)[1], 1343(3).
Simply stated, King claims he is entitled to placement in a
Community Corrections Center (CCC) 6 months before his sentence
expires; but prison officials have determined his CCC placement
will be for 2 months.  An order to show cause issued,
respondents filed an Answer and Return, petitioner filed a
Traverse and supplemental authorities, and the matter is ready
for decision.  Having considered all the materials filed, the

---

[1]     Petitioner has not, however, paid the correct filing fee for a federal civil rights action ($250). He has instead paid only the $5 filing fee for federal habeas corpus.  There is some convincing authority suggesting the particular claim raised herein is not a challenge to the fact or duration of confinement, and is therefore not proper grounds for federal habeas corpus relief.  The court declines to dismiss this action solely on that basis given petitioner proceeds pro se, and this court is compelled to liberally construe the pleading as seeking relief under other federal statutes, particularly those cited by petitioner.  If this case survived initial screening, the court might require petitioner to pay the proper filing fee and follow procedures applicable to a federal non-habeas civil action.

court finds as follows.

**FACTUAL BACKGROUND**

In June, 2001, petitioner was indicted for violations of the Foreign Corruption Practices Act. He was convicted in the Western District of Missouri by jury verdict and sentenced in November, 2002, to imprisonment for 30 months, followed by 2 years supervised release. He alleges he began serving his sentence on April 21, 2004.

For the sake of clarity, this court simplifies its discussion of the 3 different versions of the BOP's policy for CCC placement relevant to petitioner's claims as follows. The first version, the BOP's prior policy, was in effect until December, 2002, and is referred to herein as "Version 1." "Version 2" of the policy is the revision formulated by the BOP in December, 2002. The second revision, the 2005 policy[2], is referred to herein as "Version 3."

Petitioner claims that under Version 1 of their policy on CCC placement, the BOP's practice was to transfer inmates to

---

[2] Petitioner herein does not claim Version 3 was adopted in violation of the notice-and-comment requirement found in the Administrative Procedure Act (APA). Such an assertion would have no merit because Version 3 was promulgated in accordance with the APA. See Moss v. Apker, 376 F.Supp.2d 416, 424 (SDNY 2005); Pimentel v. Gonzales, 367 F.Supp.2d 365, 372 (EDNY 2005). Several challenges under the APA succeeded as to Version 2, which was not passed according to APA procedure. However, any challenge to Version 2 is moot at this point, as it has been superseded by Version 3. Id. at 421.

a CCC for the last six months of their sentences[3].  He correctly recounts that Version 1 was found to be contrary to the BOP's statutory authority by the Department of Justice Office of Legal Counsel (OLC), which issued a formal memorandum opinion to that effect in December, 2002[4].  The OLC memo provided, among other things, that the BOP's authority to transfer inmates to a CCC was limited by 18 U.S.C. 3624(c) to the last ten percent of an inmate's sentence with a six-month cap.  To comply with the OLC memo, the BOP formulated Version 2 and began limiting CCC designations of prisoners to no more than the last ten percent of their sentences with a six-month cap.

In 2004, two circuit courts of appeal declared Version 2 invalid, finding the statutory authority did not limit CCC transfer to the last ten percent of an inmate's prison term, but instead conferred discretionary authority upon the BOP to transfer inmates to a CCC at any time.  See Goldings v. Winn, 383 F.3d 17, 23-24 (1st Cir. 2004)(3621 confers discretionary authority upon the BOP to transfer an inmate to a CCC at any time, and 3624(c) does not prohibit the BOP from transferring to a CCC before the last ten percent of their prison terms); Elwood

---

[3]

Respondents similarly allege the BOP previously allowed an inmate to serve a portion of his or her sentence in a CCC, including up to six (6) months of the last portion of incarceration, regardless of what percentage that portion was of their sentence.

[4]

Respondent notes in the A&R that the OLC memo was in response to an inquiry by the BOP.

<u>v. Jeter</u>, 386 F.3d 842, 846-47 (8th Cir. 2004)(same)[5].

Petitioner in this case asserts he is entitled to application of Version 1 of the BOP's policy, and that under it and 18 U.S.C. 3624(c) he has the right to spend the last six months of his sentence in a CCC. He complains that under Version 3, he is eligible for placement in a CCC for only the last three months (10% of 30 months) of his sentence[6]. Respondents, in their Answer and Return allege and show that petitioner has a "projected release date of June 24, 2006, and a "pre-release preparation date" of April 7, 2006. They further allege that petitioner has been approved for a two month CCC placement.


**<u>CLAIMS</u>**

Petitioner claims he is entitled to application of Version 1 of the BOP's policy, and that Version 2 and Version 3 have been invalidated by some federal courts. He argues the BOP

---

[5]

Petitioner cites these two Circuit Court cases as legal support for his claim. The Third Circuit issued an opinion in December, 2005, which relied upon these two Circuit Court opinions, and invalidated Version 3 of the BOP's policy. <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235, 243 (3rd Cir. 2005). Petitioner cites and discusses <u>Woodall</u> in a Supplemental Brief. Petitioner also relies upon <u>Pementel</u>, 367 F.Supp.2d at 365 and <u>Cook v. Gonzalez</u>, 2005 WL 773956 (D.Ore. April 5, 2005, unpublished). The court has considered all these opinions and others.

[6]

Petitioner alleges 6 months before his sentence expires was on or about December 24, 2005. He further alleges that under new BOP policy he would be eligible 3 months before his sentence expiration, which he alleges is the first of April, 2006.

must follow the existing case law cited by him; and that application to his case of Version 3 violates the Ex Post Facto Clause of the United States Constitution. He asks this court to instruct the BOP to place him in a CCC for the last six months of his sentence.


## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Whether the Petition is construed as a habeas corpus action under 28 U.S.C. 2241, a federal civil rights action under 28 U.S.C. 1331, or a hybrid of both, a federal prison inmate is required by either precedent or statute to exhaust administrative remedies before raising his claims in federal court.

Petitioner alleges that he has exhausted all available administrative remedies, and as proof, provides copies of grievances filed by him. From his exhibits, it appears King filed an "informal resolution" form (BP-8) on April 21, 2005, requesting that he be "given a six (6) month departure date for the half-way house pursuant to 18 U.S.C. § 3621(b) and § 3624(c)[7]." On June 20, 2005, petitioner filed a BP-9 with the same request, adding the argument that Version 2 and Version 3

---

[7] A review of petitioner's exhibits reveals that he did not claim in his grievances that any statutory factors favored his release to a CCC, which were ignored by the BOP. His initial grievance was a request for six-month placement in CCC. Legal claims and arguments were added during the administrative process.

of the BOP's policy had been invalidated by courts.  He stated that no acknowledgment or response had ever been provided as to his BP-8 or BP-9.  On July 25, 2005, King sent a BP-10 administrative appeal to the Regional Director.  The regional office rejected his appeal on August 5, 2005, stating "you must first file a BP-9 . . . before filing an appeal at this level." On September 8, 2005, King filed a BP-11 appeal to the Central Office.  This appeal was rejected on September 20, 2005, because there was "no record in Sentry of your filing any requests with the institution."

Respondents argue petitioner has failed to fully exhaust the administrative remedies codified at 28 C.F.R. § 542, et seq. As proof they exhibit documents indicating that since July 1990, the BOP has maintained a national database called "SENTRY," which tracks administrative remedy complaints filed by inmates from the initial filing at the institution throughout the appeal process, and that these records are maintained for 20 years. They show there is no evidence in SENTRY of any BP-9 filed by petitioner on this claim prior to October, 2005.  Respondents acknowledge that petitioner filed a regional appeal, which was rejected because it had not first been filed at the institution level, and petitioner then filed his claim at the National Level, which was rejected for the same reason[8].  On October 13,

---

[8] Respondents allege the "remedy submissions and rejection notices" were returned to petitioner for

2005, petitioner filed a new grievance at the institution level regarding his CCC placement, which was denied on November 4, 2005.  He appealed to the regional level on November 14, 2005, and his appeal was denied on December 12, 2005.  Respondents show petitioner appealed to the national level, and this appeal was "rejected for technical errors" on January 12, 2006. Petitioner resubmitted a corrected appeal, and response to it is due in March, 2006.  Respondents assert exhaustion will not be complete until King receives a response from the national level.

This court finds petitioner has made a good faith, diligent effort to exhaust and demonstrate exhaustion of his administrative remedies.  Petitioner has presented credible evidence that his administrative appeals were rejected for failure to file at the institution level when he had in fact filed at that level, but his BP-8 and BP9 were not acknowledged, responded to, or recorded.  Even if respondents had proven that petitioner should be required to await a decision on his current national appeal, it clearly appears from respondents' position in the Answer and Return that exhaustion at that level would be futile.  The court concludes petitioner has satisfied the exhaustion of administrative remedies requirement and proceeds to consider the merits of his claim.

---

correction and re-submission in accordance with Program Statement 1330.13, Administrative Remedy Program.

**DISCUSSION**

The statutory authority underlying the BOP's CCC placement policy is found in 18 U.S.C. §§ 3621 and 3624. The BOP is granted authority to designate the place of an inmate's imprisonment in 18 U.S.C. 3621(b), which pertinently provides:

> Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . , that the Bureau determines to be appropriate and suitable . . . . considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence--
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

Id.   However,  this  broad  grant  of  authority  must  be  read  in
conjunction with 18 U.S.C. 3624(c):

> Pre-release  custody.   The  Bureau  of  Prisons
> shall,  to  the  extent  practicable,  assure  that  a
> prisoner  serving  a  term  of  imprisonment  spends  a
> reasonable  part,  not  to  exceed  six  months,  of
> the  last  10  per  centum  of  the  term  to  be  served
> under  conditions  that  will  afford  the  prisoner  a
> reasonable  opportunity  to  adjust  to  and  prepare
> for  the  prisoner's  re-entry  into  the  community.
> The  authority  provided  by  the  subsection  may  be
> used  to  place  a  prisoner  in  home  confinement.
> The  United  States  Probation  System  shall,  to  the
> extent  practicable,  offer  assistance  to  a
> prisoner  during  such  pre-release  custody.

Id.

Respondents  explain  in  more  detail  the  opinion  in  the
2002 OLC Memo that Version 1 of the BOP's policy of placing
prisoners in CCC's for the last six months at the end of their
terms was inconsistent with the BOP's statutory authority.  They
note the OLC acknowledged that Section 3621(b) gave the BOP
authority to choose an inmate's place of imprisonment, but found
"community confinement does not constitute imprisonment."  The
OLC therefore opined that Section  3621(b) did not apply to CCC
placement, and that authority to transfer a prisoner to a CCC
came solely from Section 3624(c).  Then, from this section's
language of "a reasonable part, not to exceed six (6) months, of
the last 10 per centum of the term" the OLC "concluded the BOP
had no authority to transfer a prisoner to a CCC, except for the
lesser of the last 10 percent of the sentence or the last six

(6) months of the sentence." Respondents allege that on December 20, 2002, the BOP adopted the opinions of the OLC and instituted its policy (Version 2) that inmates could be released to CCC's only for the last ten percent of their terms, not to exceed six months. This change resulted in litigation nationwide. Respondents acknowledge that in 2004 the two appellate court decisions relied upon by petitioner, <u>Goldings</u> and <u>Elwood</u>, overruled Version 2 of the BOP procedure. They allege decisions of the United States district courts "varied widely." Some upheld the BOP's changes while others invalidated them.

Since the issuance of the OLC Memo in December 2002, the BOP followed the rule-making process under the APA to create new federal regulations which "authorize limited CCC placements according to the BOP categorical exercise of discretion under § 3621(b)." The new regulations, 28 C.F.R. § 570.20-21, (Version 3) became effective on February 14, 2005, and impose the "same practical limitations on CCC placements as the procedural changes that were originally implemented in response to the OLC Memo (Version 2). Under Version 3, the BOP limits placements of inmates in CCC's for the last 10 percent of their sentence, not to exceed 6 months.

Respondents correctly allege that neither the two appellate courts cited by petitioner nor the Tenth Circuit Court

of Appeals have addressed the newly promulgated BOP regulations. Respondents also correctly point out that the legal authority relied upon by petitioner, including Goldings, Elwood, and various federal district court cases, are outside the Tenth Circuit and consequently are not controlling in this court.

Respondents urge the court to disregard any "persuasive" authority of the opinions in the First and Eighth Circuits. They further argue that the Tenth Circuit has found that challenges to placement in a pre-release program are not actionable through habeas petitions, *citing* Zamarripa v. Peterson, 105 Fed.Appx. 253, 254 (10th Cir. July 15, 2004)(copy attached to A&R, Doc. 9, Attach. 11).  In Zamarripa, the Tenth Circuit held that an inmate has no right to placement in any type of pre-release program, and dismissed the prisoner's claim for longer CCC placement under Section 3624(c).  Respondents contend the Tenth Circuit held that the decision whether to place an inmate at a CCC or another institution is nonreviewable.

The court finds petitioner does not claim that the BOP failed in his case to consider any of the "statutory factors," for example recommendations made by the sentencing judge, in determining the date of his CCC placement.  Petitioner also does not claim that he was entitled to placement in CCC prior to the

final six months of his term of imprisonment[9].

Instead, petitioner challenges the BOP's determination that his transfer to CCC will be for only the last two months of his sentence.  His claim hinges entirely on the validity of his assertion that he is entitled to placement in a CCC for the final six-month period of his term of imprisonment.  The legal authority King cites for this assertion is Version 1 of the BOP's policy, and federal cases outside the Tenth Circuit.

**EX POST FACTO CLAIM**

Petitioner's allegations are liberally construed to assert that retroactive application to him of Version 3 rather than Version 1 of the BOP policy violates the constitutional prohibition against ex post facto laws.  The court finds such a claim is without merit.  "Not every retroactive procedural change creating a risk of affecting an inmate's term or

---

[9] These are the claims determined in many of the cases cited by petitioner, and his more general claims are factually distinguishable from those cases.  See e.g., Woodall, 432 F.3d at 238 (BOP ignored sentencing judge's recommendation that Woodall spend the last 6 months of his term in a halfway house); Pimentel, 367 F.Supp.2d at 375 (rule improperly precludes a consideration of statutory factors in the case of CCC placement).  In any event, this court believes the factors delineated in 18 U.S.C. 3621(b) do not affect the BOP's jurisdiction over CCC placement.  As noted in Dismas Charities, Inc., v. U.S. Dept. of Justice, 401 F.3d 666, 672 FN4 (6th Cir. 2005), the Senate Report discussing passage of Section 3621(b) provided ". . . The Committee, by listing factors for the Bureau to consider in determining the appropriateness or suitability of any available facility, does not intend to restrict or limit the Bureau in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability." Id., citing S.Rep. 98-225 at 141-42 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3324-25.

conditions of confinement is prohibited." <u>Garner v. Jones</u>, 529 U.S. 244, 250 (2000). The policy change at issue in this case cannot be said to have altered the definition of petitioner's criminal conduct or increased the punishment previously imposed. <u>See California Dep't of Corr. v. Morales</u>, 514 U.S. 499, 506 FN 3 (1995); <u>Moss</u>, 376 F.Supp.2d at 425. Moreover, the statutes on which the BOP's authority is based and in which the "last ten per centum" temporal limitation is clearly set forth predate petitioner's offense. <u>See Richmond v. Scibana</u>, 387 F.3d 602, 604 (7th Cir. 2004).

Petitioner is not entitled to application of Version 1 to his case simply because Version 2 (and Version 3) have been invalidated in some jurisdictions other than this one.

**DENIAL OF EQUAL PROTECTION CLAIM**

Plaintiff generally alleges that inmates confined at some other prison camps are being placed by the BOP in a CCC for the last six months of their sentences, while some inmates at the Leavenworth camp are not. These allegations are liberally construed as a claim of denial of equal protection. The BOP alleges in its Answer and Return that its policy as to CCC placement is now different in jurisdictions where courts have invalidated Version 3 of its policy. Thus, the court accepts as true that the BOP has acquiesced in judicial opinions in some

jurisdictions, notably the First and Eighth Circuits, and refrained from applying Version 2 or 3 of its CCC policy within those judicial districts. However, in many other jurisdictions, Version 3 of the BOP policy has not been invalidated and is being applied by the BOP.

Petitioner is confined in a jurisdiction where Version 3 has not been invalidated. The BOP's application to him of Version 3 is not illegal under controlling case law within this Circuit. The BOP is not compelled by equal protection principles to acquiesce nationwide in the First and Eighth Circuits' decisions. See Fristoe v. Thompson, 144 F.3d 627, 630 (10th Cir. 1998).


**ENTITLEMENT TO 6-MONTH CCC PLACEMENT CLAIM**

The court finds no convincing authority for petitioner's assertion that he is legally entitled to placement in a CCC for the last six months of his term of incarceration. This precise claim was raised in Zamarripa, 105 Fed.Appx. at *1. There the Tenth Circuit Court of Appeals reasoned that these allegations fail to state a claim for federal habeas relief because no violation of the Constitution, laws or treaties of the United States is alleged. Id. at *2. The lower federal court and the Circuit Court in Zamarripa relied upon Prows v. Federal Bureau of Prisons, 981 F.2d 466, 469 (10th Cir. 1992), cert. denied, 510

U.S. 830 (1993).  In <u>Prows</u>, the Tenth Circuit considered 18 U.S.C. 3624(c), and upheld the lower court's conclusion that this statutory provision "did not bestow upon federal inmates an enforceable entitlement to any particular form of pre-release custody."  <u>Prows</u>, 981 F.2d at 468.  The Tenth Circuit also cited 18 U.S.C. 3621(b) as vesting discretion in the Bureau of Prisons to direct confinement in any available facility and to transfer a prisoner from one facility to another at any time.  <u>Id</u>. at 468-49, FN 3.  The Circuit also cited venerable opinions of the United States Supreme Court for the well-settled proposition that "prisoners generally enjoy no constitutional right to placement in any particular penal institution."  <u>See</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 244-48 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 225-28 (1976).  This court finds this reasoning controlling as well as persuasive.

Plaintiff's pro se pleading may also be construed to raise the issue of whether the BOP has adopted a permissible construction of its statutory authority.  The cases cited by petitioner have considered this issue generally, but only in determining the specific issues raised by the facts in those cases.  As noted, those cases are not controlling in this district.  In any event, this court does not find their reasoning applicable or persuasive with respect to the particular claim raised by petitioner's factual allegations.

This court considers whether the BOP's statutory authority speaks to the particular issue raised by petitioner. That issue is limited to whether or not the BOP is required under either or both 18 U.S.C. 3621(b) and 3624(c) to place petitioner in a CCC for the final six months of his term of imprisonment. This court has no difficulty determining from the plain language of the two statutes that neither contains such a requirement. Nor does the formal BOP rule valid in this Circuit, Version 3, contain such a requirement. The BOP's formal regulation is entitled to deference under <u>Chevron</u> and receives "controlling weight unless arbitrary, capricious or manifestly contrary to the statute." <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 844 (1984).

The court is presented with no facts or convincing legal authority indicating the BOP exceeded its statutory authority by promulgating Version 3 of its policy or by deciding in petitioner's case that his placement in a CCC will be for the last two months of his prison term. The plain wording of Section 3621(b) grants discretion to initially place and transfer inmates among facilities[10] to the BOP, which necessarily means the BOP has discretion to decline a particular placement

---

[10] This court does not hold that a CCC is not a "place of confinement" to which the BOP has discretion to transfer inmates.

to an inmate.   The discretionary authority to transfer an inmate to a CCC is specified in Section 3624(c), but is explicitly "constrained by temporal limits" set forth therein.   See Yip v. Federal Bureau of Prisons, 363 F.Supp.2d 548 (EDNY 2005); Elwood, 386 F.3d at 848 (dissenting opinion).   Any other reading of the two statutes renders superfluous the time limits in Section 3624(c).

For the foregoing reasons, this court holds petitioner's claim that the BOP is required to transfer him to a CCC for the last six months of his term of imprisonment finds no support in the statutes or current agency regulations governing placement of prison inmates, and that the BOP's decision in his case is not shown to be contrary to its statutory authority, arbitrary or capricious, or otherwise contrary to federal statutory or constitutional law.   The court concludes petitioner is entitled to no relief.

**IT IS THEREFORE ORDERED** that petitioner's Motion to Supplement Authorities (Doc. 11) is granted, and his Motion to Strike Response to Motion (Doc. 13) is denied.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief denied.

DATED:  This 30th day of March, 2006, at Topeka, Kansas.


s/RICHARD D. ROGERS
United States District Judge